NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| BERTHA PITTMAN, Individually and as Administratrix ad Prosequendum for the Estate of Aaron Pittman, and as Administratrix of the ESTATE OF AARON PITTMAN, | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 06-CV-1617 (DMC) |
| Plaintiffs, | |
| v. | |
| THE COUNTY OF UNION, *et al.*, | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion for summary judgment by Defendant Correctional Health Services, Inc. ("CHS"); motion for summary judgment by Defendants County of Union (the "County") and the County of Union Jail (the "Jail"); and motion to dismiss for failure to comply with the statute of limitations by Trinitas Hospital (the "Hospital," and with CHS, the County and the Jail, collectively, "Defendants"). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the Parties, and based upon the following, it is the finding of this Court that CHS's motion for summary judgment is **granted**; the County and the Jail's motion for summary judgment is **granted**; and the Hospital's motion to dismiss for failure to comply with the statute of limitations is **granted**.

I.     **BACKGROUND**[1]

A.     Procedural History

Plaintiff Bertha Pittman ("Plaintiff") filed a Complaint in the Superior Court of New Jersey on January 31, 2006, alleging in Count One, Wrongful Death; Count Two, common law negligence / medical malpractice; and Count Three, for a violation of civil rights, pursuant to 42 U.S.C. §1983, against Defendants regarding medical care that a deceased inmate Aaron Pittman (the "Decedent") received while incarcerated at the Jail from January 14, 2004 to February 1, 2004. The County removed this case to the United States District Court for the District of New Jersey on April 6, 2006. An Answer was filed on behalf of CHS on May 30, 2006.  Plaintiff filed an Amended Complaint on September 18, 2006, which added Count Four, negligence, against the Hospital. Additionally, the Amended Complaint removed the wrongful death claim reference to Count One. CHS filed an answer on October 18, 2006. On January 15, 2008, this Court entered an Order for the medical records accompanying this motion to be filed under seal.

B.     Factual History

This case surrounds around the Decedent's medical treatment while serving time as an inmate at the Jail. An intake and initial assessment was performed on January 14, 2004. A physical was performed by Dr. George Long on January 15, 2004. Dr. Borham noted a history of Crohn's Disease with previous treatment at Muhlenberg Hospital. The Decedent was prescribed prednisone, 10 mg t.i.d. x 7, and Pentasa, 250 mg, 4 tabs t.i.d. x 30 days. The Decedent was seen by Dr. Pico on January 22, 2004 and Bentyl 20 mg. B.i.d. x 5 was ordered. On January 31, 2004, the Decedent was triaged for complaints of abdominal pain, vomiting, inability to sleep and

---

[1] The facts set forth in this Opinion are taken from the undisputed facts set forth in the Parties' FED. R. CIV. P. 56.1 statements in their respective moving papers.

trouble tolerating medication. The charge nurse referred the Decedent for the next sick call. On February 1, 2004, at 8:30 a.m., the Decedent returned with complaints of severe abdominal pain. He was temporarily housed in the medical unit for observation. His vital signs included a 99 degree temperature, pulse 72, respiration 26 and bp 80/60. The nurse's notes indicate that the discomfort continued at 1:30 p.m. and at 2:00 p.m., the Decedent was transported to the Trinitas Hospital Emergency Room ("ER"). According to Dr. Mario Pico, M.D., the Decedent was logged in at the E.R. at 2:58 p.m. and admitted to the floor. At 7:30 p.m., the Decedent was transferred to the Intensive Care Unit ("ICU") with a diagnosis of sepsis and dehydration. He was intubated, but was pronounced dead at 0050. The control center at the Jail called the night shift charge nurse at approximately 2:00 a.m. to notify them of the death. Only Dr. Long was notified of the Decedent's death at that time.

According to Dr. Pico, the Jail Medical Director, Dr. Long ordered the nurse to contact Dr. Borham's office, who was Plaintiff's outside doctor, regarding medications. Dr. Long prescribed prednisone for seven days consistent with Dr. Borham's recommendation. Prednisone is a medication used to treat flare ups of Crohn's Disease. Pentasa was continued for thirty days. The Medication Administration Record Sheets ("MARS") confirm that the Decedent received the medication that was prescribed by Dr. Long. According to the medical chart, Dr. Long ordered the nurse to contact Dr. Borham's office. Prednisone was prescribed for flare ups, as medically indicated, consistent with Dr. Borham's recommendation. According to the medical chart, Nurse Leach was the nurse who placed the Decedent in the infirmary for observation at approximately 8:30 a.m. on February 1, 2004. The chart note indicates that at 1:30 p.m., the Decedent's abdominal discomfort continued with vomitting and possible dehydration. The

3

Decedent was sent to the ER at 2:00 p.m. for evaluation due to complaints of severe abdominal pain. All necessary personnel were notified and there was a call from the on-call doctor in response to those notifications. The Decedent was given the appropriate treatment for Crohn's Disease after consulting with his primary doctor.

Tiffany Whiteside was the Decedent's girlfriend. She spoke to him by telephone approximately two or three times while the Decedent was in Jail in January 2004. Whiteside never visited the Decedent in Jail. She last spoke to the Decedent approximately one week prior to his death on February 2, 2004. She does not recall if the Decedent told her whether he saw the doctor at the Jail when she and the Decedent spoke on the telephone.

## II.   STANDARD OF REVIEW

### A.   FED. R. CIV. P. 56 Motion for Summary Judgment

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  See id.  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 586 (1986).  "[U]nsupported allegations in [a] memorandum and pleadings are insufficient

to repel summary judgment."  <u>Schoch v. First Fid. Bancorporation</u>, 912 F.2d 654, 657 (3d Cir.

1990).  "In determining whether there are any issues of material fact, the Court must resolve all

doubts as to the existence of a material fact against the moving party and draw all reasonable

inferences - including issues of credibility - in favor of the nonmoving party."  <u>Newsome v.

Admin. Office of the Courts of the State of N.J.</u>, 103 F. Supp.2d 807, 815 (D.N.J. 2000), <u>aff'd</u>,

51 Fed. Appx. 76 (3d Cir. 2002) (citing <u>Watts v. Univ. of Del.</u>, 622 F.2d 47, 50 (D.N.J. 1980)).

      B.    <u>F<small>ED</small>. R. C<small>IV</small>. P. 12(b)(6) Motion to Dismiss</u>

In deciding a motion to dismiss pursuant to F<small>ED</small>. R. C<small>IV</small>. P. 12(b)(6) , all allegations in the

complaint must be taken as true and viewed in the light most favorable to the plaintiff.  <u>See

Warth v. Seldin</u>, 422 U.S. 490, 501 (1975); <u>Trump Hotels & Casino Resorts, Inc., v. Mirage

Resorts Inc.</u>, 140 F.3d 478, 483 (3d Cir. 1998).  If, after viewing the allegations in the complaint

in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted

"under any set of facts which could prove consistent with the allegations," a court shall dismiss a

complaint for failure to state a claim. <u>See Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  In

<u>Bell Atl. Corp. v. Twombly</u>, the Supreme Court clarified the F<small>ED</small>. R. C<small>IV</small>. P. 12(b)(6) standard.

<u>See</u> 127 S.Ct. 1955 (2007).  Specifically, the Court "retired" the language contained in <u>Conley v.

Gibson</u>, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim,

which would entitle him to relief."  <u>Bell Atl. Corp.</u>, 127 S.Ct. at 1968 (citing <u>Conley</u>, 355 U.S. at

45-46).  Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise

5

a right to relief above the speculative level." <u>Bell Atl. Corp.</u>, 127 S.Ct. at 1965.

## III.   DISCUSSION

A.   Plaintiff Failed to File Suit Against the Hospital Within the Applicable Statute of Limitations

Under N.J.S.A. 2A:14-2(a), an "action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within 2 years next after the cause of any such action shall have accrued." Under the Wrongful Death Act, "every action brought under this chapter shall be commenced within 2 years after, the death of the decedent." N.J.S.A. 2A:31-3; <u>see also</u> <u>McGrogan v. Till</u>, 327 N.J. Super. 595 (App. Div. 2000). Furthermore, the New Jersey Supreme Court has recognized that, for statute of limitations purposes, a cause of action generally accrues on the date that the allegedly negligent act occurred. <u>See</u> <u>Baird v. Am. Med. Optics</u>, 155 N.J. 54 (1998).

In the current case, the medical treatment rendered by the Hospital was provided on February 2, 2004. The Decedent died on February 2, 2004 at the Hospital. Plaintiff received a telephone call from a doctor at the Hospital on February 2, 2004, advising her that the Decedent died. According to Plaintiff, during the telephone call, the doctor told her that "it shouldn't have never [sic] happened to a young man." According to Plaintiff, a doctor at the Hospital also told Plaintiff's daughter that the Decedent was "too young to die." Plaintiff suspected that negligence was involved in her son's death, whether or not in response to the doctor's statements to her and her daughter on February 2, 2004, as she instituted a negligence suit against the Defendants on January 31, 2006, within the two year statute of limitations. Plaintiff did not, however, include the Hospital in the suit, despite the fact that she knew the Hospital was involved in the Decedent's care on February 2, 2004. Because Plaintiff knew that the Hospital was involved in the Decedent's treatment, there was a sufficient

6

opportunity to investigate the care and treatment rendered to the Decedent at the Hospital on February 2, 2004, just as Plaintiff was evaluating the care provided to the Decedent by the other Defendants. Plaintiff, however, did not name the Hospital as a Defendant until September 18, 2006 – more than seven months after the statute of limitations expired for either a personal injury action or a statutory wrongful death action. Therefore, the Hospital is entitled to dismissal of the Complaint with prejudice for Plaintiff's failure to bring timely suit.

      B.      <u>CHS's Motion for Summary Judgment</u>

            1.      <u>Wrongful Death Claim</u>

CHS is entitled to summary judgment on Count One of the Complaint because the facts demonstrate that the Decedent received medical care. Plaintiff disputes the adequacy of the medical care, but Plaintiff's medical expert, Dr. Scotti, incorrectly bases his opinions on the Decedent not receiving his medication in Jail.

Dr. Scotti's opinion is based on a misunderstanding of the facts of this case. The Decedent received his Prenisone and Pentasa as prescribed by Dr. Long and given as noted on the MARS. Prenisone was prescribed for Chron's Disease flare ups, as medically indicated. The prescriptions were confirmed with the Decedent's doctor, Dr. Borham. The Decedent was administered the Prednisone for seven days, as prescribed by Dr. Long for the Crohn's Disease flare ups and also received the Pentasa on a thirty-day course of treatment. The Decedent was given appropriate treatment for Crohn's Disease after consulting with his primary doctor.

In a wrongful death case, the plaintiff has the burden of proving that the death ensued from some conduct chargeable to the defendants. <u>See</u> <u>Evers v. Evers Marine Serv., Inc.</u>, 487 F. Supp. 1283 (D.N.J. 1980). Therefore, since the Decedent received his medications as prescribed

for his Crohn's Disease flare up in conjunction with consulting with his primary doctor and because Dr. Scotti's opinion is based on incorrect facts, CHS is entitled to summary judgment on Count One of the Complaint.

2.   Common Law Negligence / Medical Malpractice

Plaintiff's claim for common law negligence / medical malpractice in Count Two of the Complaint fails and, therefore, must be dismissed. Plaintiff's claims against CHS are medical malpractice claims. In order to establish a *prima facie* cause of action of negligence in a medical malpractice action alleging a deviation from the standard of care, a plaintiff must present expert testimony establishing (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation caused the injury. See Teilhaber v. Greene, 320 N.J. Super. 453, 465 (App. Div. 1999). A plaintiff in a medical malpractice suit must demonstrate a departure from the standard of care and a fact equally essential to the recovery of damages. See Lanzet v. Greenberg, 243 N.J. Super. 218, 224 (App. Div. 1988), reversed on other grounds, 126 N.J. 168 (1991).

In the current case, the facts are insufficient for Plaintiff to prove any of the three elements of a medical malpractice cause of action. The medical staff provided medical care to the Decedent. There is no credible evidence in this case that shows that the medical staff's actions, that were employed by CHS, were the proximate cause of the Decedent's death. The only opinion against CHS is by Plaintiff's expert, Dr. Scotti, who believed that the Decedent did not receive Prednisone. Bare allegations in the pleadings, without factual support will not defeat summary judgment. See Milacci v. Mato Realty Co., Inc., 217 N.J. Super. 297, 300 (App. Div. 1961).

8

Because there are no facts to support the bare allegations in the Complaint regarding a violation of common law negligence or medical malpractice, CHS is entitled to summary judgment on Count Two of the Complaint.

3.      There is No Vicarious Liability and Decedent's Medical Treatment by the Defendant Does Not Rise to Deliberate Indifference

The gravamen of a 42 U.S.C. §1983 complaint is that a prisoner has been subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. See Estelle v. J.W. Gamble, 429 U.S. 97, 102 (1976). In Estelle, the Supreme Court of the United States stated that the elementary principles of the Eighth Amendment "establish[] the government's obligation to provide medical care for those whom it is punishment by incarceration." The Court recognized that an inmate "must rely on prison authorities to treat his medical needs, if the authorities fail to do so, those needs will not be met." Id. The Court concluded that "deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Id. at 104 (quoting Gregg v. Georgia, 428 U.S. 153, 182-83 (1976)). The Estelle test is two-pronged: the prisoner must show that prison officials have acted with "deliberate indifference;" and the prisoner's injury or illness must be serious. See id.; Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). A serious medical need that satisfies the objective component of the deliberate indifference standard is one that constitutes a condition of urgency, may produce death, degeneration or extreme pain. See Hathaway v. Coughlin, 37 F. 3d 63, 66 (2d Cir. 1994).

Where prison officials deny reasonable requests for medical treatment and "such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F. 2d 326, 346 (3d Cir. 1987) (quoting Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976)). Additionally, the deliberate indifference standard is satisfied if prison authorities are aware of the need for medical care and intentionally refuse to provide that care. See id. (quoting Ancata v. Prison Health Servs., Inc., 769 F. 2d 700, 704 (11th Cir. 1985)). In order to avoid dismissal of a plaintiff's deliberate indifference complaint, the plaintiff must allege conduct that "shocks the conscious." Kopec v. Coughlin, 767 F. Supp. 463, 465 (S.D.N.Y. 1990), vacated on other grounds, 922 F. 2d 152, (2nd Cir. 1991).

Deliberate indifference to a prisoner's serious medical needs constitutes the "unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104. Simple medical malpractice, however, is insufficient to present a constitutional violation. See Durmer v. O'Carroll, 991 F. 2d 64, 67 (3d Cir. 1993) (citing Estelle, 429 U.S. at 106). Prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners. See Pierce, 612 F. 2d at 762; White v. Napoleon, 897 F. 2d 103, 110 (3d Cir. 1990). Mere disagreements between a doctor and the inmate patient regarding the course of treatment does not reflect "deliberate indifference" on the part of the doctor. See Walker v. Peters, 863 F. Supp. 671 (N.D. Ill. 1994). Courts generally do not find deliberate indifference when some level of medical care has been offered to an inmate. See, e.g., Christy v. Robinson, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). Like the prisoner in Walker, the Decedent's medical records demonstrate

10

attentiveness. See 863 F. Supp. at 674.

No claim for deliberate indifference is presented when a doctor merely disagrees with another doctor's professional judgment. For example, there are often several ways to treat an illness. See Napoleon, 897 F. 2d at 110. A physician following his own professional medial judgment, and not that of another physician, does not result in a finding of any deliberate indifference toward an inmate. See Brewer v. Blackwell, 836 F. Supp. 631 (S.D. Iowa 1993).

In the current case, the Decedent was a pre-trial detainee during his incarceration. Accordingly, his medical care should be analyzed under the Due Process Clause of the Fourteenth Amendment, as opposed to the Eighth Amendment. Courts, however, have understood that, for purposes of evaluating deliberate indifference under the Fourteenth Amendment, the United States Court of Appeals for the Third Circuit applies the same standard that pertains to deliberate indifference claims brought under the Eighth Amendment, even though Hubbard can be interpreted as suggesting that the Court below should determine if the two standards were different. In practice, the analysis is the same as for a sentenced inmate. See Hubbard v. Stanley Taylor, 399 F.3d 150 (3d Cir. 2005); Woloszyn v. County of Lawrence, 396 F.3d 314 (3d Cir. 2005).

There is sufficient evidence in the Jail medical records to show that the Decedent received medical care while at the Jail, including being assessed on intake by a nurse, being seen by Dr. Long for a physical exam on January 15, 2004 and being prescribed Prednisone and receiving the Prednisone for seven days, as well as Pentasa for the length of his stay at the Jail. Dr. Pico saw the Decedent on January 22, 2004 and ordered Bentyl. Then on January 31, 2004,

11

he was seen by a nurse for triage and referred to sick call for the following day. On February 1, 2004, the Decedent returned to the medical department with complaints of severe abdominal pain, was housed in the infirmary for observation and when he was still in distress, he was sent to the Hospital at 2:00 p.m.

4.      No Vicarious Liability for CHS Under 42 U.S.C. §1983

CHS is entitled to summary judgment because a private corporation performing a municipal function may not be held vicariously liable under 42 U.S.C. §1983. See Natale v. Camden County Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003); Taylor v. Plousis, 101 F. Supp. 2d 255, 263-65, n.4 (D.N.J. 2000).

In Taylor, the plaintiff sued CHS and the district court found that a private corporation performing a municipal function is entitled to the protections laid out in Monell v. Dept of Soc. Servs. of the City of New York. In Monell, the Supreme Court of the United States held that the corporation could not be held vicariously liable under 42 U.S.C. §1983. See Taylor, 101 F. Supp. 2d at 263 (citing Monell, 436 U.S. at 691-94). The Court's reasoning in Monell was equally applicable to private corporations and 42 U.S.C. §1983 evinced a Congressional intent not to impose vicarious liability. See Taylor, 101 F. Supp. 2d at 263 (citing Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982)). In Taylor, the Court noted that, in order to assert a claim against CHS, Plaintiff must show that a constitutional deprivation resulted from an official custom or policy or, alternatively, from an official's actions with "final authority to establish municipal policy." Id. at 264 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986)). In order for a defendant to be held liable, the plaintiff must demonstrate that the

12

government [or, in this case, the government's contractor] defendant's policy or custom caused the injury. See Monell, 436 U.S. at 694; Natale, 318 F.3d at 583.

In the current case, as in Taylor, Plaintiff has failed to adduce any evidence of a policy or custom enacted by CHS that amounted to deliberate indifference to the Decedent's serious medical needs. Plaintiff has also failed to introduce any evidence demonstrating that any CHS official with final policymaking authority acted with deliberate indifference to his need for adequate medical care. Furthermore, there was no deliberate indifference to the Decedent's medical needs, but rather continued attention to the Decedent's medical care. Plaintiff's counsel may not like the degree of medical care provided to the Decedent, but that does not merit a finding of deliberate indifference or even for the deliberate indifference claim to go to the jury. Therefore, like in Taylor, CHS is entitled to summary judgment. There is no evidence that the Decedent submitted any sick call slips to be seen by a doctor or a nurse while in the Jail. If he felt that the medical staff was not attending to him properly, he could have asked in writing to be seen by the doctor, but he failed to do so. Therefore, Plaintiffs' cause of action for deliberate indifference against CHS is dismissed.

              5.      Punitive Damages Must be Barred as to CHS

CHS is entitled to summary judgment dismissing all of Plaintiff's claims for punitive damages on all counts of the Complaint because the facts do not support any possible finding of punitive damages.

Punitive damages are sums awarded apart from compensatory damages and are assessed when the wrongdoer's conduct is especially egregious. Punitive damages are awarded on a theory

13

of punishment to the offender for aggravated misconduct and to deter such conduct in the future.

See Leimburger v. Claridge Assocs., Ltd, 73 N.J. 450, 454 (1977). Punitive damages are a

remedy incidental to a cause of action and not an independent substantive cause of action. See

Hassoun v. Cimmino, 126 F.Supp. 2d 353 (D.N.J. 2000). Punitive damages are not to be applied

in the ordinary unaggravated tort case regardless of whether it is grounded on strict liability or

fault. See Berg v. Reaction Motors Div., Thiokol Chem. Corp., 37 N.J. 396, 413 (1962). To

warrant a punitive damages award, a defendant's conduct must have been wantonly reckless or

malicious. There must have been intentional wrongdoing in the sense of an "evil-minded act" or

an act accompanied by wanton and wilful disregard to other's rights. See Nappe v. Anschelewitz,

Barr, Ansell & Bonello, 97 N.J. 37, 49 (1984).

Punitive damages may be awarded under 42 U.S.C. § 1983 if a plaintiff shows conduct

motivated by evil motive or intent or reckless or callous indifference to the federally protected

rights of others. See Smith v. Wade, 461 U.S. 30, 56 (1983). In this case, however, there are no

facts to support any evil intent or evil motive or any reckless or callous indifference by CHS to

the Decedent while he was in the Jail.

Punitive damages are not permitted on a wrongful death claim, the primary purpose

of which is to compensate survivors for the pecuniary losses they suffer because of the tortious

conduct of others. See Pavlova v. Mint Mgmt Corp., 375 N.J.Super. 397, 409, n.2 (App. Div.

2005).

In this case, there are no facts to support any finding for punitive damages. The Decedent

was attended to by numerous members of the CHS medical staff at the Jail from January 14,

2004 until he was transferred to the Hospital on February 1, 2004 and died the following day.

The CHS medical staff has exhibited no evil-minded action or wanton activity.

    C.      Summary Judgment by the County and the Jail

        1.      <u>The County and the Jail are Entitled to Summary Judgment as a Matter of Law Because a 42 U.S.C. § 1983 Claim Cannot be Premised Upon a Theory of *Respondeat Superior*</u>

Plaintiff's claims against the County and the Jail should be dismissed because the claims fail to allege personal conduct sufficient to state a claim under 42 U.S.C. § 1983. In <u>Monell</u>, the Supreme Court of the United States held that there is no *respondeat superior* liability under § 1983 and that municipal liability can only attach "when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Monell</u>, 436 U.S. at 694; <u>Merkle v. Upper Doublin Sch. Dist.</u>, 211 F.3d 782, 791 (3d Cir. 2000). It is well-settled that a claim brought pursuant to 42 U.S.C. § 1983 may not be supported on theories of either vicarious liability or *respondeat superior*. <u>See, e.g.</u>, <u>Polk County</u>, 454 U.S. at 325; <u>Rizzo v. Goode</u>, 423 U.S. 362, 370-77 (1976); <u>Monell</u>, 436 U.S. at 694; <u>Colvurn v. Upper Darby Twp.</u>, 946 F.2d 1017 (3d Cir. 1991); <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077, 1082 (3d Cir. 1973). Further, a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). In <u>Rode</u>, the Court held that "[p]ersonal involvement can be shown through the allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with

15

appropriate particularity." Id.

Furthermore, a plaintiff must establish that the defendants' conduct was "intentional and purposeful" and that the defendants were the perpetrators of the constitutional deprivation. See Brown v. Sielaff, 474 F.2d 826, 827 (3d Cir. 1973); Howell v. Cataldi, 464 F.2d 272, 282 (3d Cir. 1972). The plaintiff must plead with a "modicum of factual specificity, identifying the specific conduct of defendant that is alleged to have harmed plaintiff." Ross v. Meagan, 638 F.2d 646, 650 (3d Cir. 1981). Therefore, claims based on *respondeat superior* are insufficient to maintain a cause of action under 42 U.S.C. § 1983.

This principle was affirmed by the Supreme Court of the United States in Bd. of County Comm'rs v. Brown. See 520 U.S. 397 (1997). In Brown, the Court held that, in order to sustain a cognizable § 1983 claim, the plaintiff must do more than merely identify conduct attributable to the defendant. Rather, the plaintiff must show that the defendant, through deliberate conduct, was the "moving force" behind the alleged injury. In other words, the plaintiff must establish that the defendant's action "was taken with requisite degree of culpability and must demonstrate a direct causal link between the [defendant's] action and the deprivation of federal rights." Id.

In the current case, Plaintiff's recovery against the County and the Jail must be predicated on some particular action by them as opposed to an action taken by a nonpolicymaking municipal employee. Proof of a single incident of unconstitutional activity is insufficient to impose liability under Monell.

A correctional officer or medical professional independently contracted to provide medical care may grossly, outrageously and recklessly misbehave in the course of a single

16

incident. Such misbehavior may, in a given case, be fairly attributable to various municipal policies or customs, either those that authorize the individual or those that did not authorize but nevertheless were the "moving force" or caused the violation. See Polk County, 454 U.S. at 326. In such a case, the governmental entity would be at fault for the constitutional violation. Yet, it is equally likely that their misbehavior could be attributable to various other factors for which the governmental entity may not be responsible. See Brandon v. Holt, 469 U.S. 464, 466 (1985). In such a case, the governmental entity may not be able to blame for the incident.

It, therefore, follows that without some proof of governmental policy or custom independent of the individual's misconduct, there is no way of knowing whether the governmental entity is at fault. To infer the existence of a governmental policy from the isolated misconduct of a single officer or independent medical person and then to hold the entity liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in Monell. The Complaint generally claims that the County and the Jail were policymakers and/or individuals responsible for training individuals to administer health care to incarcerated persons and failed to supervise. The Complaint, however, does not allege that the County and the Jail were personally involved in the Decedent's medical treatment. Therefore, because Plaintiff has not properly alleged personal involvement sufficient to state a cause of action under 42 U.S.C. § 1983, the Complaint should be dismissed as to the County and the Jail.

2.    <u>The Complaint is Dismissed Because the County and the Jail Cannot Be Found to Be Deliberately Indifferent to the Decedent's Medical Needs Because Plaintiff Received Consistent Medical Treatment While in Custody and the County and the Jail Reasonably Relied on the Medical Professionals' Decisions</u>

The Complaint is dismissed because the Decedent received comprehensive and consistent health care while in custody and the County and the Jail may reasonably rely on medical professionals' decisions.

"Failure to provide medical care to a person in custody can rise to the level of a [C]onstitutional violation under [Section] 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs." <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 637 (3d Cir. 1995) (citing <u>Walmsley v. City of Phila.</u>, 872 F.2d 546, 551-52 (3d Cir. 1989)). The "deliberate indifference" standard is in effect a two-pronged test: (1) the prisoner's medical needs must be serious; and (2) there must be deliberate indifference on the part of the defendants. <u>See</u> <u>Lanzaro</u>, 834 F.2d at 345.

The first prong, serious medical need, is a need "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize that necessity for a doctor's attention." <u>Id.</u> at 347. The second prong, deliberate indifference, may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." <u>Estelle</u>, 429 U.S. at 104-05. The denial of a reasonable request for medical treatment may constitute deliberate indifference where the "denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.'" <u>Lanzaro</u>, 834 F.2d at 334.

A prison official is deliberately indifferent when he knows of, and disregards, an excessive risk to inmates' health or safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The official must be both aware of facts from which the indifference could be drawn that a substantial risk of serious harm exists and he must also draw the indifference. See id. An official's failure to alleviate a significant risk that should have been recognized, and was not, does not constitute a violation of the Eighth Amendment. See id. at 838. Furthermore, officials who actually knew of a substantial risk to inmate safety and responded to this information may be free of liability. See id. at 844. "Prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id.

Under Durmer v. O'Carroll, prison administrators cannot be considered deliberately indifferent to an inmate's serious medical needs when they simply fail to respond directly to a complaint and the inmate was under the care of medical professionals. See 991 F.2d 64, 69 (3d Cir. 1993). Durmer addressed a similar issue in a medical indifference case in reviewing a district court's decision to grant the defendants' summary judgment motion. The plaintiff filed a civil rights claim against medical personnel and two administrators, William Fauver, Commissioner of the New Jersey Department of Correction, and Robert Barker, the Superintendent of Mid-State Correctional Facility. The basis of the claim against Fauver and Barker was that these defendants failed to respond to the plaintiff's complaints regarding his medical treatment. The district court granted defendants' motion for summary judgment as to all of the defendants. On appeal, the United States Court of Appeals for the Third Circuit reversed the summary judgment order as to the physician and upheld the dismissal as to Fauver and Barker because "[n]either of the

19

defendants . . . is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison physician." Id. at 69; see also Parker v. Burns, et al., 2004 WL 609333, *3 (D. Del. 2004); Scantling v. Vaughn, et al., 2004 WL 306126, *9 (E.D. Pa. 2004).

In Spruill v. Gillis, the court applied the holding in Durmer to a motion to dismiss and upheld the district court's dismissal of a deliberate indifference claim against a non-physician prison supervisor. See 372 F.3d 218, 236 (3d Cir. 2004). In doing so, the court noted that, if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. See id. at 236. The court concluded that, absent a reason to believe or actual knowledge that prison medical doctors are mistreating or not treating, a non-medical person official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference. See id.

In the current case, the Complaint generally asserts that the County and the Jail were policymakers and/or individuals responsible for training individuals to administer health care to incarcerated persons and were deliberately indifferent toward the Decedent's medical needs when they denied him adequate medical care while in the Jail's custody. The records submitted in support of this motion, however, show that the County and the Jail provided the Decedent with comprehensive medical care and could reasonably rely on the medical judgment of the medical professionals treating him. Thus, the County and the Jail cannot be charged with the scienter of deliberate indifference and the plaintiff's claims against the County and the Jail should be dismissed.

## IV.   CONCLUSION

For the reasons stated, it is the finding of this Court that CHS's motion for summary judgment is **granted**; the County and the Jail's motion for summary judgment is **granted**; and the Hospital's motion to dismiss for failure to comply with the statute of limitations is **granted**.  An appropriate Order accompanies this Opinion.

         S/ Dennis M. Cavanaugh

        Dennis M. Cavanaugh, U.S.D.J.

Date:        March   24  , 2008
Orig.:       Clerk
cc:         All Counsel of Record
             Hon. Mark Falk, U.S.M.J.
             File