NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | **Hon. Dennis M. Cavanaugh** |
|---|---|---|
| BERTHA PITTMAN, Individually and as Administratix ad Prosequendum for the Estate of Aaron Pittman, and as Administratrix of the ESTATE OF AARON PITTMAN, | : : : : : : | **OPINION** Civil Action No. 06-CV-1617 (DMC) |
| Plaintiffs, | : : | |
| v. | : : | |
| THE COUNTY OF UNION, *et al.*, | : : | |
| Defendants. | : : | |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

      This matter comes before the Court upon Plaintiff Bertha Pittman's ("Plaintiff") motion for reconsideration. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Plaintiff's motion for reconsideration is **denied**.

I.    **BACKGROUND**[1]

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

    A.     <u>Procedural History</u>[2]

On January 31, 2006, Plaintiff filed a Complaint in the Superior Court of New Jersey, alleging in Count One, Wrongful Death; Count Two, common law negligence / medical malpractice; and Count Three, a violation of civil rights, pursuant to 42 U.S.C. §1983, against Defendants regarding medical care that a deceased inmate, Aaron Pittman (the "Decedent"), received while incarcerated at the County of Union Jail (the "Jail") from January 14, 2004 to February 1, 2004. The County of Union (the "County") removed this case to the United States District Court for the District of New Jersey ("District of New Jersey") on April 6, 2006. An Answer was filed on behalf of Correctional Health Services, Inc. ("CHS") on May 30, 2006. Plaintiff filed an Amended Complaint on September 18, 2006, which added Count Four, negligence, against Trinitas Hospital (the "Hospital"). Additionally, the Amended Complaint removed the wrongful death claim reference to Count One. CHS filed an answer on October 18, 2006. On January 15, 2008, this Court entered an Order for the medical records accompanying this motion to be filed under seal. This Court granted Defendants' motions for summary judgment and motion to dismiss on March 24, 2008. Plaintiff thereafter timely filed a motion for reconsideration.

    B.     <u>Factual History</u>

This case surrounds around the Decedent's medical treatment while serving time as an

---

[2] As with other motions, a motion for reconsideration should be supported by a brief, and the party opposing the motion may also submit a brief. Reply and further briefs are not permitted without permission. See <u>Truong v. Levy</u>, 2006 U.S. Dist. LEXIS 4779 (D.N.J. Feb. 6, 2006); <u>Grayzel v. St. Jude Medical</u>, 2004 U.S. Dist. LEXIS 24215 (D.N.J. Oct. 13, 2004); <u>Chiniewicz v. Henderson</u>, 202 F. Supp. 2d 332, 334 n.2 (D.N.J. 2002).

2

inmate at the Jail. An intake and initial assessment was performed on January 14, 2004. A physical was performed by Dr. George Long on January 15, 2004. Dr. Borham noted a history of Crohn's Disease with previous treatment at Muhlenberg Hospital. The Decedent was prescribed prednisone, 10 mg t.i.d. x 7, and Pentasa, 250 mg, 4 tabs t.i.d. x 30 days. The Decedent was seen by Dr. Pico on January 22, 2004 and Bentyl 20 mg. B.i.d. x 5 was ordered. On January 31, 2004, the Decedent was triaged for complaints of abdominal pain, vomiting, inability to sleep and trouble tolerating medication. The charge nurse referred the Decedent for the next sick call. On February 1, 2004, at 8:30 a.m., the Decedent returned with complaints of severe abdominal pain. He was temporarily housed in the medical unit for observation. His vital signs included a 99 degree temperature, pulse 72, respiration 26 and bp 80/60. The nurse's notes indicate that the discomfort continued at 1:30 p.m. and at 2:00 p.m., the Decedent was transported to the Trinitas Hospital Emergency Room ("ER"). According to Dr. Mario Pico, M.D., the Decedent was logged in at the E.R. at 2:58 p.m. and admitted to the floor. At 7:30 p.m., the Decedent was transferred to the Intensive Care Unit ("ICU") with a diagnosis of sepsis and dehydration. He was intubated, but was pronounced dead at 0050. The control center at the Jail called the night shift charge nurse at approximately 2:00 a.m. to notify them of the death. Only Dr. Long was notified of the Decedent's death at that time.

      According to Dr. Pico, the Jail Medical Director, Dr. Long ordered the nurse to contact Dr. Borham's office, who was Plaintiff's outside doctor, regarding medications. Dr. Long prescribed prednisone for seven days consistent with Dr. Borham's recommendation. Prednisone is a medication used to treat flare ups of Crohn's Disease. Pentasa was continued for thirty days.

The Medication Administration Record Sheets ("MARS") confirm that the Decedent received the medication that was prescribed by Dr. Long. According to the medical chart, Dr. Long ordered the nurse to contact Dr. Borham's office. Prednisone was prescribed for flare ups, as medically indicated, consistent with Dr. Borham's recommendation. According to the medical chart, Nurse Leach was the nurse who placed the Decedent in the infirmary for observation at approximately 8:30 a.m. on February 1, 2004. The chart note indicates that at 1:30 p.m., the Decedent's abdominal discomfort continued with vomitting and possible dehydration. The Decedent was sent to the ER at 2:00 p.m. for evaluation due to complaints of severe abdominal pain. All necessary personnel were notified and there was a call from the on-call doctor in response to those notifications. The Decedent was given the appropriate treatment for Crohn's Disease after consulting with his primary doctor.

## II.     STANDARD OF REVIEW

In the District of New Jersey, motions for reconsideration are governed by L. Civ. R. 7.1(i).  See U.S. v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999).  A motion for reconsideration may be granted only if (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) if it is necessary to correct a clear error of law or prevent manifest injustice.  See Database Am., Inc. v. Bellsouth Adver. & Pub. Corp., 825 F. Supp. 1216, 1220 (D.N.J. 1993).  Such relief is "an extraordinary remedy" that is to be granted "very sparingly."  See NL Indus. Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996).

## III.    DISCUSSION

4

Plaintiff asserts that the motion for reconsideration should be granted because there is a need to correct clear error of law or fact and because a failure to alter or amend this judgment would result in manifest injustice. Plaintiff contends that this Court overlooked the fact that the Decedent did not receive his medications for the periods of time directed by his physician and that such failure resulted in his death. Further, Plaintiff contends that the Court erred regarding both the facts and the law when it held that the opinion of Dr. Scotti, Plaintiff's expert, could not be accepted as it was not based on accurate facts. Plaintiff asserts that Dr. Scotti's opinion was, in fact, based on accurate facts and the Court erroneously based its judgment on the conclusion that Plaintiff alleged that the Decedent did not receive any medications *at all*, rather than the allegation that the Decedent was not receiving his medications *as prescribed*.

The Court acknowledged, in its Opinion, that Plaintiff "disputes the adequacy of the medical care," but that it is Dr. Scotti's opinions which are based on the Decedent not receiving his medication in Jail. See Pittman v. County of Union, No. 06-1617, 2008 WL 906235, at 7 (D.N.J. 2008). The Court concluded that the Decedent received Prenisone and Pentasa as prescribed by Dr. Long and given as noted on the MARS. See id. These prescriptions were confirmed with Dr. Borham, the Decedent's physician. See id. Moreover, the Court found that the Decedent was given appropriate treatment for Crohn's Disease after consulting with his doctor. See id. Such conclusions indicate that the Court specifically addressed the issue and, thus, did not overlook that the Decedent purportedly did not receive his medicine for certain periods of time.

Further, the Court did not err in holding that Dr. Scotti's opinion was based on a

5

misunderstanding of the facts and, therefore, was not accepted. Dr. Scotti's July 11, 2007 report indicated that the Decedent "did not receive his medication while at Union County Jail." (Def.'s Ex. "K" to Original Summ. J. Mot.). In addition, in the July 24, 2007 report that Plaintiff uses in support of her claim, Dr. Scotti does not indicate that the Decedent received Prednisone while in Jail. In the report, Dr. Scotti merely recites what was stated in the Medications Sheet and Physician Orders Sheet. Plaintiff also relies significantly on Dr. Scotti's deposition taken on February 1, 2008. This date, however, is after the discovery end date and the time in which the motion for summary judgment was filed.

More importantly, though, this deposition contradicts Dr. Scotti's previous reports. "When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists." Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991). "The objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit." Martin v. Merrell Dow Pharm., Inc., 851 F.2d 703, 706 (3d Cir. 1988). While, in the current case, a deposition is at issue, rather than an affidavit, summary judgment would be just as seriously impaired if the district court were not free to disregard a conflicting deposition.

Moreover, Plaintiff contends that Dr. Scotti's opinion is not based upon a misunderstanding of the facts regarding his view that Defendants deviated from the acceptable standards of medical care by waiting to transport the Decedent to the Hospital. Plaintiff uses both the July 24, 2006 report and the February 1, 2008 deposition to support this assertion. The

Court did not overlook this evidence in rendering its decision. While it characterized the delay as inappropriate and a contribution to the Decedent's death, Dr. Scotti's July 24, 2006 report never sufficiently expressed that it was his opinion within a reasonable degree of certainty that the delay in transportation was the proximate cause of the Decedent's death.

Irrespective, however, of the inconsistencies in Dr. Scotti's reports, this Court held that there is no credible evidence in this case that demonstrates that the medical staff's actions were the proximate cause of the Decedent's death. See Pittman, 2008 WL 906235, at 8. This Court, thus, found the facts to be insufficient for both a medical malpractice and wrongful death cause of action. Bare allegations in the pleadings, without factual support, will not defeat a motion for summary judgment. See Milacci v. Mato Realty Co., Inc., 217 N.J. Super. 297, 300 (App. Div. 1961).

### IV.   CONCLUSION

For the reasons stated, it is the finding of this Court that Plaintiff's motion for reconsideration is **denied**. An appropriate Order accompanies this Opinion.

DENNIS M. CAVANAUGH
Dennis M. Cavanaugh, U.S.D.J.

Date:       June 26, 2008
Orig.:      Clerk
cc:         All Counsel of Record
            Hon. Mark Falk, U.S.M.J.
            File

7